**In re Roy E. DRAGOO and Barbara Drágoo, Debtors.**

**HOUSEHOLD CREDIT SERVICES, INC., Plaintiff,**

**v.**

**Roy E. DRAGOO and Barbara Dragoo, Defendants.**

**In re Mark Thomas HALPIN, Debtor.**

**BANK OF NEW YORK, Plaintiff,**

**v.**

**Mark Thomas HALPIN, Defendant.**

**Bankruptcy Nos. 197–10084–7, 297–20200–7.**
**Adversary Nos. 197–1017, 297–2021.**

United States Bankruptcy Court,
N.D. Texas,
Abilene and Amarillo Divisions.

March 23, 1998.

Matthew C. Guilfoyle, Davis & Shank, Houston, TX, for Ms. Myers and Mr. Porter.

Kelly Gill, McMahon, Surovik, Suttle, Buhrmann, Cobb & Hicks, P.C., Abilene, TX, for Bank of New York.

Larry Elms, Lubbock, TX, for General Motors Corporation.

William S. Weinstein, Weinstein, Fischer, Riley, Erickson & Wolf, P.S., Seattle, WA, Michael R. Rochelle, Rochelle & Hutcheson, L.L.P., Dallas, TX, Robert B. Wilson, Sims, Kidd, Hubbert & Wilson, Lubbock, TX, for Household Credit Services, Inc.

Britt Thurman, Thurman & Nix, Abilene, TX, for Roy E. Dragoo and Barbara Dragoo.

Bill Kinkead, S. Georgia, Amarillo, TX, for John Cecial Moore.

Mark Thomas Halpin, Amarillo, TX, Pro se.

JOHN C. AKARD, Bankruptcy Judge.

### Background

This court serves four divisions of the Northern District of Texas. The court noticed a pattern of objections to the dischargeability of credit card debts being filed without service being made on the debtors or their attorneys. Attorneys for the debtors learned of these objections only when the matters appeared on the court's trial dockets. When the cases were called for trial, no one appeared on behalf of the credit card issuer. The court awarded monetary sanctions against the credit card issuer. As these filings became more frequent, the court increased the sanctions. The common thread running through all of these cases was that Myers & Porter filed them.

Matters came to a head in Danny Gene and Shannon Jo Vangunten's case No. 195–10140; in adversary proceeding No. 196–1016, *Household Credit Services, Inc. v. Shannon Jo Vangunten.* Dick Harris, the debtors' attorney, testified that on the last day for filing objections to the dischargeability of debts in the case, he received a letter

from Ms. Myers threatening to file an objection to the dischargeability unless Ms. Vangunten agreed to reaffirm a substantial portion of her credit card debt to Household Credit Services, Inc. (Household). On the same day, the firm filed an objection to the dischargeability. Mr. Harris responded by letter to Ms. Myers pointing out that payments on the credit card obligation had been made regularly and promptly for a number of years. The payments stopped when Ms. Vangunten's daughter was forcibly raped and needed extensive medical services and emotional counseling. The funds they previously used to pay the credit card obligations were used for the benefit of their daughter. Similar facts were plead in the answer which Mr. Harris filed in the adversary proceeding. He issued interrogatories to Household in care of Ms. Myers, but they were not answered. Ms. Myers made no responses whatsoever to Mr. Harris' inquiries about the matter. Indeed, he was completely ignored. When the case was called for trial on August 26, 1996, no one representing Household appeared and no one from Myers & Porter appeared. After considering the evidence and the argument of Mr. Harris, the court dismissed the complaint, awarded Mr. Harris $4,500 .00 attorney's fees and $500.00 costs against Household, and $5,000.00 sanctions against Household and Joan Myers, jointly and severally. Mr. Harris testified that his efforts to collect that judgment were frustrated until approximately a year later, when he was able to speak to Household's general counsel. That conversation took place shortly after the court's notices to show cause were issued in the captioned adversary proceedings.

### The Dragoo Case

The record in the Dragoo case shows that on May 5, 1997, Household, by its attorney Ms. Myers, filed a complaint to determine the dischargeability of a $7,326.75 credit card debt. The complaint alleged "that all or a portion of this debt is non-dischargeable" pursuant to § 523(a)(2)(A) of the Bankruptcy Code [1] in that the Debtors obtained "money, property, services, or an extension, renewal, or refinancing of credit ... by false pretenses, a false representation, or actual fraud." In spite of the fraud allegation, no facts or circumstances constituting fraud were stated with particularity as required by Federal Rule of Civil Procedure 9(b) which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7009, nor was supporting documentation attached to the complaint. The complaint referred to a contract between the parties, but the contract was not attached to the complaint.

On May 9, 1997, the Clerk of this court issued a Summons and Notice of Trial (Summons) which was sent to Ms. Myers for service along with a copy of the complaint as required by Federal Rule of Civil Procedure 4(c)(1) which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7004(a). The Clerk also sent Ms. Myers a sheet of instructions to assist the attorney in proper and timely service of the Summons and complaint. There is no evidence that the Summons and complaint were served on Mr. and Mrs. Dragoo or their attorney. The instruction sheet emphasized that the Summons and complaint are required to be served within ten days from the issuance of the Summons by Federal Rule of Bankruptcy Procedure 7004(e).

On August 18, 1997, Household, through Mr. Porter, filed a motion for entry of default judgment in which he asserted that the Debtors had "been duly and legally served in the manner and [for the] length of time required by law." The proposed, order which was submitted with the motion for default judgment, contained an award of $1,000.00 in attorney's fees for Household's attorneys. However, the motion plead no contract or any other basis for an award of attorney's fees. No evidence of reasonableness of the attorney's fees was provided to the court. By order entered August 21, 1997, the court denied the motion for default. A copy of the order denying the motion for default was sent to Myers & Porter and to the Debtors'

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

attorney, Britt Thurman. On August 25, 1997, Mr. Thurman filed a response to the motion for default which stated that neither he nor the Debtors were served with the Summons and complaint.

The Summons set trial for August 25, 1997. When the matter was called for trial, no one from the Myers & Porter firm appeared. No one representing Household appeared. Mr. Thurman and the Debtors appeared. Mr. Thurman moved to dismiss the complaint. He stated that the first knowledge he had of the complaint was when he received a copy of the court's order denying the motion for default. The court dismissed the complaint.

The court issued a notice to show cause in the Dragoo case on October 6, 1997. The objection to dischargeability was filed on behalf of Household. The Debtors' schedules did not reflect a debt to Household. The schedules reflected a General Motors Corporation credit card with the same account number as that plead by Household in the adversary proceeding. The schedules further indicated that the card was issued by HBSBNA of Salinas, California. Therefore, the court issued the show cause to General Motors Corporation, HBSBNA, Household, Ms. Myers and Mr. Porter. The notice to show cause set a hearing for December 1, 1997. The notice to show cause instructed Household to file certain documents and information prior to the hearing. Household complied. The notice to show cause instructed Ms. Myers to file, by November 12, 1997, a statement under oath listing all complaints seeking determination of the dischargeability of a credit card debt filed by her, James E. Porter, and/or the firm of Myers & Porter from January 1, 1996 through October 1, 1997. Ms. Myers did not comply. When the court inquired about the statement at the December 1, 1997 hearing, her malpractice attorney assured the court that the report would be promptly filed. It was subsequently filed.

### The Halpin Case

On May 27, 1997, the Bank of New York (Bank), by its attorney Ms. Myers, filed a complaint against Mr. Halpin to determine the dischargeability of a credit card debt in the amount of $5,617.78. The complaint appears identical to the one filed in the Dragoo case with appropriate changes of name and account number. The acts constituting fraud were not alleged with particularity and, in spite of reference to a contract, no documents were attached to the complaint. On May 30, 1997, the Clerk issued the Summons and forwarded it to Ms. Myers for service. There is no evidence of service of the Summons and complaint. On August 11, 1997 Ms. Myers filed a motion for entry of default judgment in the same form used in the Dragoo case, including the statement that the Debtor was properly served. By order of August 15, 1997, the court denied the motion for default and sent a copy to Ms. Myers and to the *pro se* Debtor.

The Summons set a trial on the complaint for September 10, 1997. When the matter was called, no one from the law firm of Myers & Porter appeared. No one representing the Bank appeared. The Debtor appeared. He stated that the first notice he received of the adversary proceeding was a copy of the court's order denying the motion for default. He stated that after receiving that order, he received a copy of the complaint from Ms. Myers, but that he never received a Summons in the adversary proceeding. The court dismissed the complaint.

On October 7, 1997, the court issued a notice to show cause to the Bank and to Ms. Myers. A hearing on the show cause was set for December 10, 1997 in the Amarillo Division. As a result of the December 1, 1997 hearing in the Dragoo matter, the court continued the hearing and consolidated it with a February 23, 1998 hearing set in Abilene, Texas.

### The Moore Case

On July 7, 1997, Household Bank, by its attorney Ms. Myers, filed a complaint to determine the dischargeability of a credit card debt in the amount of $1,086.89 against Mr. Moore. The complaint is identical to the one used in the Dragoo case, with appropriate changes of name and account number. The acts or circumstances constituting fraud are not alleged with particularity and, although a contract is referenced, no docu-

ments were attached to the complaint. On July 14, 1997, the Clerk issued a Summons and forwarded it to Ms. Myers for service. There is no evidence of service of the Summons and complaint. On August 13, 1997, Bill Kinkead, the attorney for the Debtor, filed a response to the complaint in which he stated that neither he nor the Debtor had been served with the Summons. The Debtor requested that Household Bank be ordered to pay reasonable attorney's fees to the Debtor's attorney. The attorney's certificate of service shows that a copy of the response was sent to Ms. Myers on August 13, 1997. The file does not reflect any efforts by Ms. Myers to secure the issuance of a new Summons and to have it properly served.

The Summons set a trial for October 22, 1997 in the Amarillo Division. When the matter was called for trial, no representative of Myers & Porter appeared. No one representing Household Bank appeared. The Debtor and his attorney appeared. The court dismissed the complaint.

On November 18, 1997, the court issued a notice to show cause to Household Bank, Household, and Ms. Myers. A hearing on the matter was scheduled for January 21, 1998. Following the December 1, 1997 hearing in the Dragoo case, the court continued the Moore hearing and consolidated it with the Dragoo and Halpin matters to be heard on February 23, 1998 in Abilene, Texas.

### December 1, 1997 Hearing

Following issuance of the notices to show cause, Mr. Porter filed substantially identical declarations in the Dragoo and Halpin cases. He stated that he was the principal of the firm of Myers & Porter who handled the representation of Household and the Bank. He asserted that the complaints were justified. He stated that in November 1996 he suffered a nervous collapse and had been under continual medical treatment for depression since that time. He did not believe that his clients were aware of his medical condition. He stated that "Unfortunately, my depression had caused me to hide and conceal items, to misplace items, to become afraid to come into court, and to avoid opening correspondence and/or responding to it."

He sought to take full responsibility for the actions of Myers & Porter in these cases.

On December 1, 1997 in Abilene, Texas, the court heard testimony in the Dragoo case from a representative of General Motors Corporation. He stated that the credit cards commonly known as the GM Card were issued by Household Credit Services, Inc. and that all records and collection efforts were made by Household and related entities. Attorney William S. Weinstein of the Seattle, Washington law firm of Weinstein, Fischer, Riley, Erickson & Wolf, P.S., testified that his firm handled all bankruptcy credit card collections throughout the United States on behalf of Household and the Bank. He described tests which his firm applied to each case to determine whether it was a likely subject for an objection to the dischargeability of the debt. He introduced a letter agreement dated January 12, 1996 between his firm and Ms. Myers on behalf of Myers & Porter concerning collection of receivables from Chapter 7 bankruptcy debtors in the Northern and Eastern Districts of Texas. In the agreement, Myers & Porter was designated the Local Firm and Mr. Weinstein's firm was designated the Delegating Firm. A portion of the agreement provides:

> Local Firm will endeavor to have attorneys attend all first meetings of creditors under 11 U.S.C. § 341. Local Firm will endeavor to contact the debtor or its attorneys diligently and in good faith to obtain reaffirmation agreements. In the event that Local Firm deems it necessary to file an adversary complaint, it will seek the written permission of the Delegating Firm. Local Firm will also provide monthly written reports on the status of all cases, including but not limited to, any adversary actions and will copy Delegating Firm with any pleadings filed in said adversary actions.

The agreement provided for Myers & Porter to purchase appropriate software to connect to Mr. Weinstein's firm's electronic mail system. Mr. Weinstein testified that there was no evidence that attorneys from Myers & Porter had attended meetings of creditors. Myers & Porter did not secure permission from Mr. Weinstein's firm before filing ad-

versary complaints nor did the firm furnish copies of pleadings in adversary complaints to Mr. Weinstein's firm. Apparently, there was difficulty getting the electronic mail service connected and reports were not regular. Mr. Weinstein stated his firm terminated the services of Myers & Porter.

Ms. Myers and Mr. Porter did not testify at the hearing. They were represented at the hearing by Matthew C. Guilfoyle who, only a few days prior to the hearing, was brought into the case by Myers & Porters malpractice carrier. He requested time to investigate the matter and to have Mr. Porter examined by appropriate doctors. The court recessed the hearing to February 23, 1998, but advised the parties it would consider the testimony introduced on December 1, 1997 as part of the record.

### February 23, 1998 Hearing

On February 20, 1998, Household, the Bank, and the GM Card filed a supplemental memorandum in which they asserted that they had paid $21,281.75 to debtors' attorneys in settlement of five different cases including the Vangunten, Dragoo, and Moore cases. Most of the settlements were paid after the issuance of the notices to show cause, but before the December 1, 1997 hearing. They asserted that over $75,000.00 was paid to various attorneys representing these creditors in connection with the activities of Myers & Porter. The declaration stated: "These five law firms have settled, resolved, or closed approximately sixty (60) cases in the Eastern, Northern and Western Districts of Texas. These law firms have made a number of court appearances before other bankruptcy judges and have satisfactorily resolved all outstanding cases." The report stated that to the best of the knowledge of these creditors, all matters instituted on their behalf by Myers & Porter had been resolved except the pending show causes. The report further stated:

It is worth mentioning that some of the debtors' counsel admitted that their clients had liability under the filed complaints, but that Myers & Porter never responded to their written or oral communications to settle the cases. In each of those cases, Household and [Bank] stipulated to the

dismissal of these cases because of the misconduct of Myers & Porter. Thus, Household for the sake of resolving these matters has chosen to give up its rights to admitted valid exceptions to discharge. It is anticipated that total damages to Household, [Bank] or GM, or their assignees, will be in excess of $240,000.

At the February 23, 1998 hearing, Mr. Guilfoyle presented testimonial evidence from a psychiatrist and a counselor concerning Mr. Porter's deep depression problems. The psychiatrist testified that she did not see Mr. Porter until January 1998. She recommended continuing psychiatric counseling for an indefinite period of time. Mr. Guilfoyle stated that Mr. Porter had agreed to accept help from a program sponsored by the State Bar of Texas for lawyers experiencing depression, mental problems, or substance abuse problems. As part of that program, he has a monitoring attorney to whom he must report regularly. In a statement to the court, Mr. Porter tearfully acknowledged his problems and apologized to the court, the creditors, the debtors, and his wife for the problems which his depression caused them.

At the beginning of the hearing, the court noted its concern over the fact that Ms. Myers had signed documents in these cases. She testified that for several years she was house counsel for the Tandy Corporation handling collection matters. It was her contacts that brought collection work to the firm of Myers & Porter. Basically, she left the handling of the accounts obtained through Mr. Weinstein's firm to her husband, Mr. Porter. She signed without question any documents Mr. Porter presented to her. Because Myers & Porter was to pay court costs for the filing of an adversary proceeding and was to be recompensed on a one-third contingency basis, the account had not been profitable. In spite of the wording of the letter agreement, it was her understanding that the discretion to file a nondischargeability complaint remained with Myers & Porter. She acknowledged some delay and difficulty in getting reports to Mr. Weinstein's firm, but said that members of his staff had represented to her that was not a great problem. Her legal practice consists principally of state

court collection activities. She indicated that she and her husband had financial difficulties.

On behalf of Ms. Myers and Mr. Porter, Mr. Guilfoyle acknowledged that sanctions were appropriate, but asked the court for leniency in view of Mr. Porter's problems with depression.

In a post-hearing conference with attorneys, the court discussed the potential economic impact of various sanctions on Ms. Myers and Mr. Porter. The court asked Mr. Guilfoyle to consult with his clients and send a written report to the court with copies to the other attorneys. He did so. Attached to his letter was an affidavit from Mr. Porter again accepting full responsibility for the problems in these cases and an affidavit from Ms. Myers again stating that she had relied on the documents prepared by Mr. Porter and had signed them without making any investigation. She thinks that her reliance on Mr. Porter excuses her from responsibility and liability in these matters.

### Discussion

The court found that Mr. Weinstein's law firm, Household, the Bank, and General Motors Corporation were not responsible for the problems caused by Myers & Porter. The court dismissed Household, the Bank, and General Motors Corporation from the notices to show cause. The court had previously dismissed HBSBNA, which turned out to be Household Bank (SB), N.A. from these proceedings.

Mr. Porter accepted full responsibility for causing the problems in these cases. Although his depression was diagnosed in November 1996, it appears that the treatment he received at that time and in early 1997, was insufficient to cure those problems. Apparently, under Mr. Guilfoyle's direction, Mr. Porter has now secured additional medical treatment and has secured help from the State Bar of Texas which, hopefully, will lead to his full rehabilitation. The court commends Mr. Guilfoyle for his efforts to secure rehabilitation for Mr. Porter as well as his skill in handling this case.

Ms. Myers accepted no responsibility whatsoever and stated that she should be exonerated because she relied on documents prepared by Mr. Porter. Normally, a wife is expected to believe what her husband has said. However, she was certainly aware of his problems with depression and his treatment for those problems. This knowledge should have put her, both as a wife and as a law partner, on guard to make sure matters were correctly handled. The difficulties with reporting and communicating with Mr. Weinstein's firm were sufficient to put her on notice that something was amiss. There is no evidence that she made any efforts to determine that matters within the law firm were being properly handled.

Ms. Myers signed many of the documents filed in these three cases. Apparently Ms. Myers has forgotten the lesson learned by every first year law student in the course on contracts, that is: "Signatures are not mere ornaments." Further, Ms. Myers requested this court to totally ignore the provisions of Federal Rule of Bankruptcy Procedure 9011(b) which read as follows:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifical-

ly so identified, are reasonably based on a lack of information or belief.

Ms. Myers acknowledged that she made no inquiry whatsoever. She simply signed whatever Mr. Porter prepared. The Summons is sent to the attorney for service accompanied by a detailed sheet of instructions on service of that Summons. Even a casual look at the file would have shown that the Summons had not been served. Considering Mr. Porter's mental problems and the other difficulties evident in this case, it clearly was not reasonable to make no inquiry. She made no effort to determine if the claims were warranted by existing law and furnished no evidence of the fraud which she alleged. She made no effort to determine that the allegations and other factual contentions had evidentiary support. Rule 9011(b) places obligations on her as an attorney. She cannot escape her failure to fulfill those obligations by saying that she blindly relied on someone else.

■ The court is mindful that the sanctions imposed should be the least possible necessary to secure future compliance by the parties to be sanctioned. In view of their financial difficulties, the court finds that monetary sanctions against Ms. Myers and Mr. Porter would be financially devastating to them. At the February 23, 1998 hearing, it was stated that their malpractice insurance carrier had denied coverage with respect to sanctions. If the malpractice insurance carrier were to pay the sanctions, the court sees no real deterrent to Ms. Myers and Mr. Porter, and consequently, a relatively useless sanction. For these reasons, the court will not impose monetary sanctions.

■ The court finds that suspension of these attorneys from practice in the United States Bankruptcy Court for the Northern District of Texas is an appropriate sanction. The purpose of sanctions is to teach the sanctioned party a lesson and to ensure that the reprehensible conduct is not repeated. The court wants to make sure that the sanctions imposed do not result in financial devastation to Ms. Myers and Mr. Porter. Ms.

Myers testified that her principal law practice was creditor representation in collection matters in state courts. There was no indication of Mr. Porter's principal area of practice at this time. Suspension of Ms. Myers and Mr. Porter from practice in the United States Bankruptcy Court for the Northern District of Texas does not prohibit them from practicing in the courts of the State of Texas, nor in bankruptcy courts in other districts of Texas.

The court is very troubled by Ms. Myers' steadfast refusal to accept any responsibility for the problems described in these cases. This refusal is made in spite of her signing a contract with Mr. Weinstein's firm, her signing pleadings in these cases, her false representation to the court that debtors had been properly served, her failure to appear at scheduled hearings, her failure to timely file the report ordered by this court in connection with the notice to show cause in the Dragoo case, and her knowledge of Mr. Porter's mental problems.

The court has considered a wide range of suspension and total disbarment from practice in the United States Bankruptcy Court for the Northern District of Texas. Considering the time that may be necessary for Mr. Porter to fully recover from his problems with mental depression, as well as Ms. Myers' refusal to accept responsibility in this matter, the court finds that these attorneys should be suspended from practice in the United States Bankruptcy Court for the Northern District of Texas for a period of not less than four years. Any application for readmission to practice in this court should be accompanied by appropriate evidence of his/her mental stability, evidence of any grievance or malpractice claims filed against them subsequent to this date and the resolution of those matters, and evidence that within the twelve months preceding the application, he/she has completed not less than fifteen hours attendance at courses approved for certification in consumer bankruptcy law by the Texas Board of Legal Specialization (self-study will not be permitted).

ORDER ACCORDINGLY.[2]

**2.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED R.BANKR.P. 9014. This Memorandum will be published.